(No. 30413.—

THE CITY OF CHICAGO, Appellee, *vs.* NARDI IOVINO *et al.,* Appellants.

*Opinion filed May 20, 1948—Rehearing denied September 15, 1948.*

HAROLD E. MARKS, and GEORGE F. VON KOLNITZ, JR., (EDWARD H. ENRIGHT, of counsel,) all of Chicago, for appellants.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, of Chicago, (JOSEPH F. GROSSMAN, L. LOUIS KARTON, FRANCIS T. MORAN, and HERMAN SMITH, all of Chicago, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is a test case selected from numerous suits, similar in character, pending in the municipal court of Chicago involving the validity of the so-called public carters ordinance of the city of Chicago, which is included in the Municipal Code of Chicago of 1939, as chapter 163, sections 1 to 15, inclusive.

The facts herein were stipulated by the defendants and the city of Chicago. The defendant Nardi Iovino is an employee of the defendant Lasham Cartage Company, a corporation, and was an operator of a motor vehicle owned, operated and controlled by the defendant Lasham Cartage Company. A complaint was duly filed in the municipal court of Chicago charging Iovino and the cartage company with violating sections 163-1 and 163-2 of the Municipal Code of Chicago of 1939, in that they operated without a public carter's license as required by section 163-2. This section provides as follows:

"It shall be unlawful for any person to engage in the business of, or act in the capacity of, a public carter without first having obtained a license to do so.

"Provided that where the gross floor area of any public cart is over forty-five square feet, the owner thereof shall be required to procure a furniture mover's license as provided for in this code."

It appears from the stipulated facts that a public cart licensing ordinance was properly passed by the city of Chicago prior to the year 1922. This ordinance continued in force until it was repealed by a properly enacted ordinance of the city on May 12, 1930. On June 25, 1931, the revised Chicago Code of 1931 was published by authority of the city council of the city of Chicago which consisted, among other things, of the portions of the public carters ordinance theretofore repealed. The enacting clause of the 1931 code provided that the ordinances contained therein "should be re-enacted in a form codified and arranged in appropriate parts, chapters, articles and sections." On

August 5, 1937, the city council of the city of Chicago engaged in proceedings whereby the public carters licensing portions of the code of 1931 "be and the same are hereby re-enacted." This ordinance pertaining to the licensing and regulation of public carters was published in the Chicago Journal of Commerce in December, 1937. On August 30, 1939, further proceedings took place in the city council wherein the city clerk presented a communication from the corporation counsel of the city of Chicago which reads as follows:

"Department of Law,

Chicago, August 30, 1939.

"The Honorable, The City Council of the City of Chicago:

"GENTLEMEN: In accordance with authorization of the City Council, the Department of Law has prepared a new Municipal Code of Chicago. I take pleasure in advising that the completed new code is being transmitted herewith.

"Attention is called to the fact that the new code consisting of 193 chapters, and transmitted herewith in the form of 568 printer's galleys, takes the form of an ordinance. As provided by its first section, this ordinance is known as the Municipal Code of Chicago and is to be considered as a new and original comprehensive ordinance which completely supersedes the Revised Chicago Code of 1931 and all other general ordinances passed by the City Council, prior to the date of adoption of this code, except such as by reference thereto are expressly saved from repeal.

"In presenting this code, I beg to emphasize that any changes of a substantive nature which distinguish this code from the Revised Chicago Code of 1931 are based on actions already taken by the City Council. These consist of the amendments, repeals, and additions enacted by the City Council since May 27, 1931, in the regular course of municipal legislation. They include ordinances adopted especially for this code after their submission from time to time by the Department of Law in cooperation with the Council Committee on Judiciary and State Legislation.

"In short, while the text of the new code reflects a rearrangement in organizational pattern and also editing for clarification, the text is expressive of the legislative will of the City Council as already enunciated. Because this is so, it is submitted that it will be proper for the City Council to adopt this ordinance immediately.

"To provide for proper publication, passage of the code should be followed by passage of a second ordinance which will authorize

printing of the code in book form. A draft of the suggested ordinance for this purpose is enclosed with this communication.

"It is my pleasure to state that all during the performance of the truly enormous task which preparation of this code involved, the Law Department was constantly encouraged by the sympathetic interest shown by His Honor, Mayor Edward J. Kelly, and by the members of the City Council. The department at all times worked closely with the Committee on Judiciary and State Legislation and it is a pleasure to record here the constructive nature of the fine cooperation that prevailed.

Respectfully submitted,
(Signed) BARNET HODES,
Corporation Counsel."

Thereupon the journal of proceedings of the city council, as shown by the stipulation, recites:

"Unanimous consent was given to permit action on the ordinance submitted with the foregoing communication without reference thereof to a committee (an ordinance embodying the provisions of the general ordinances of Chicago in revised and codified form to be known as the 'Municipal Code of Chicago'). Alderman Brody moved to pass the ordinance. The motion prevailed and said ordinance was passed by yeas and nays as follows: * * *."

There were further stipulations in the record as to the type of interstate business carried on by the defendant Lasham Cartage Company.

Following the city council proceedings in 1939 another ordinance was passed by the council authorizing and directing the printing and publication of the Municipal Code of Chicago in book form.

The trial court found the defendants guilty and assessed fines against them and they appeal directly to this court.

It is the contention of the defendants herein that the ordinance in question was improperly enacted and is therefore void and without effect on the theory that the public cart ordinance, containing the identical sections here in question, was in full force and effect prior to the year 1922 and up to May 12, 1930, on which date it was duly repealed by the city. The defendants further argue that a

subsequent re-enactment of that ordinance was held void in the case of *City of Chicago* v. *Degitis,* 383 Ill. 171, which holding applies to the facts now before us.

The city, on the other hand, contends that the ordinance of 1939 under which these complaints were filed is the enactment of a new and original ordinance and is not covered by the decision in the *Degitis case.*

The determination of the validity of the ordinance in question here depends upon the application of the holdings in *Fish* v. *Walsh,* 323 Ill. 359, and *City of Chicago* v. *Degitis,* 383 Ill. 171. These two cases are similar in character and in facts to the instant cause. *Fish* v. *Walsh,* involves the validity of section 291 of the Municipal Code forbidding the location of a filling station on any lot in any block in which two thirds of the improved property surrounding such block, according to frontage on both sides of the street, is used exclusively for residential purposes. This ordinance appeared in the Municipal Code of 1922, had been expressly repealed by ordinance, but was incorporated in the Municipal Code through inadvertence. The language of that ordinance described it as "an ordinance revising and codifying the general ordinances of the City of Chicago" and the preamble stated that it was necessary that the ordinance should be revised, defects and omissions should be corrected, and that they should be codified and arranged in appropriate chapters, articles and sections. There, as here, the city contended that since the ordinance appeared in the code it must be taken as a valid ordinance. In that case the city claimed that the statute provides that a printed book of ordinances shall be received as the evidence of the passage and legal publication thereof. We said "Such evidence is *prima facie* only of the validity of the ordinances, and the records of the City Council and the manner of the passage of the ordinances may be resorted to for the purpose of overcoming such *prima facie* evidence."

In *City of Chicago* v. *Degitis,* 383 Ill. 171, the identical provisions now in question were attacked with the same argument which the defendants use here. We held that, under the language used in passing the ordinance, the ordinance was not in existence and that to make a valid ordinance of these provisions it was necessary to re-enact the ordinance by setting it out in full in the re-enacting ordinance.

In the *Degitis case* we referred to section 13 of article 4 of the constitution of the State of Illinois, with reference to action before the legislature, which reads as follows: "No law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." In accordance with this provision of the constitution we held that the attempt to re-enact the provisions of the public carters ordinance was of no effect and that the sections complained of were void and without effect.

It remains to compare the facts in the instant case with the holding in the *Degitis case* to determine whether or not the city council here passed a new ordinance or whether it was attempting to re-enact the repealed ordinance of 1922. To determine this question, we, under the authority of *Fish* v. *Walsh,* must examine not only the ordinance itself but the journal of the city council to determine what the city council had in mind when it passed the ordinance in question.

It is to be noted that the letter of the corporation counsel to the city council of the city of Chicago states "In short, while the text of the new code reflects a rearrangement in organizational pattern and also editing for clarification, the text is expressive of the legislative will of the City Council as already enunciated." It further states, "In presenting this code, I beg to emphasize that any changes of a substantive nature which distinguished this code from the revised Chicago Code of 1931 are based

on actions already taken by the City Council." The title page of the code states, "Municipal Code of Chicago containing the general ordinances of the City of Chicago. Revised, compiled and edited by Barnett Hodes and Assistants." The journal of the city council states, "Unanimous consent was taken to permit action on the ordinance submitted with the foregoing communication without reference thereof to a committee (an ordinance embodying the provisions of the general ordinances of Chicago in revised and codified form to be known as the 'Municipal Code of Chicago')." It is true that the letter of the corporation counsel states that the Municipal Code of Chicago passed in 1939 is to be considered as a new and original comprehensive ordinance which completely supersedes the revised Chicago Code of 1931 and section 1-1 of the ordinance provides that it shall be treated and considered as a new and original comprehensive ordinance. We have already seen, however, that the validity of the ordinance can depend upon more than the mere printed matter in the ordinance itself and that the manner of the passage of the ordinance and the records of the city council must be resorted to for the purpose of overcoming such evidence. (*Fish* v. *Walsh*, 323 Ill. 359.) Reference to the title page of the Municipal Code, to the letter of the corporation counsel and to the journal of the city council of the city of Chicago indicates that all persons consider this a re-enactment or rather a compilation, revision and editing of ordinances already in existence. In *City of Chicago* v. *Degitis,* we determined that the 1937 ordinance re-enacting the sections of the code of 1931 was invalid, inasmuch as the sections which are identical with the sections here were not in existence and could not be re-enacted except by express passage of an ordinance again enacting those provisions into law. Under these circumstances the rule of the *Degitis case* holding these sections of the ordinance of 1937 a nullity, void and

of no effect is applicable here. The only difference between this ordinance and those of 1937 and 1931 is that rather than using the word "re-enacting," the words "revise, compiled and edited" have been used. The mere statement in the ordinance itself that the Municipal Code shall be treated and considered as a new and original comprehensive. ordinance is not sufficient to overcome the rule of the *Degitis case.*

For the reasons stated herein, the judgment of the Municipal Court of Chicago is reversed. Inasmuch as we have held that the public carters ordinance as set forth in the Municipal Code of Chicago is invalid, it is not necessary to discuss the other contentions of the appellants herein.

*Judgment reversed.*